IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DONGBU INSURANCE COMPANY, LIMITED, a foreign corporation,<br><br>       Plaintiff,<br><br>     vs.<br><br>DAVID L. WATSON and SARAH S. WATSON,<br><br>       Defendant. | CIVIL NO. 15-00214 DKW-BMK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff Dongbu Insurance Company seeks a declaration that it owes no

duty to defend or indemnify its policyholders, Defendants David and Sarah

Watson, against an action pending in Hawaiʻi state court.  The underlying action

alleges breach of contract and negligent misrepresentation claims against the

Watsons.  Because there has been no "occurrence" within the meaning of the

relevant policy sufficient to trigger coverage, the Court GRANTS Dongbu's

Motion for Summary Judgment and DENIES the Watsons' Cross-Motion for

Partial Summary Judgment.

## BACKGROUND

### I.   Factual Background

#### A.   The Underlying Action

This case arises out of a lawsuit pending in the Circuit Court of the Third Circuit, State of Hawaiʻi, entitled *Bodhi Anderson, et al., v. Casey M. Cantwell, et al.*, Civil No. 14-1-0453. The lawsuit followed the sale of real property ("the Property") by the Watsons to Bodhi and Brittany Anderson (collectively, the "Underlying Plaintiffs"). Dkt. No. 25-2, Ex. 1 ("Underlying Complaint.").

According to the Underlying Complaint, the Watsons enlisted the services of a real estate agency to sell the Property and to have it advertised on the Multiple Listing Service ("MLS") at an asking price of $435,000.00. *Id*. ¶¶ 3, 12.  The Property's MLS listing, dated March 20, 2011, allegedly contained "misleading language" regarding the Property's valuation and permitting status in an attempt "to encourage an offer higher than what the sellers and Prudential Orchid Isle Properties [the seller's agent] knew the property was appraised for on December 4, 2010." *Id*. ¶ 12.  The MLS Listing described the Property as a "5 bedroom, 3 bathroom legally permitted home," and stated that the "[c]urrent appraisal validating [the] asking price [was] available to share with accepted offers." *Id.*

Based on the information in the MLS listing, the Underlying Plaintiffs scheduled an appointment to view the property on March 20, 2011. *Id.* ¶ 13.  The

2

following day, after being told that another person was interested in purchasing the property, the Underlying Plaintiffs submitted a written offer of $400,000. *Id.* ¶¶ 14-15. On March 23, 2011, the Underlying Plaintiffs received a counteroffer, which they signed. *Id.* ¶¶ 15-18. Shortly before the agreement was executed, the Watsons' agent provided the Underlying Plaintiffs with an appraisal, dated December 4, 2010, which valued the Property at $365,000.00, less than the MLS listing price. *Id.* ¶¶ 21, 23. The Underlying Plaintiffs allege that "[a]lthough the listing clearly stated that the home was 'legally permitted,' the appraisal indicated that the 'additional space in the lower level does not appear in County records' . . . 'and that no permits were found for the area.'" *Id.* ¶ 24.

The Underlying Plaintiffs closed escrow and took possession of the Property on or about May 13, 2011. *Id.* ¶ 36.

Relevant to the issues before the Court, the Underlying Complaint asserts a breach of contract claim (Count One) and a negligent misrepresentation claim (Count Three) against the Watsons.[1] *Id.* ¶¶ 31-40, 45-53.

### B.   The Homeowners' Insurance Policy

During the periods alleged in the Underlying Complaint, the Watsons were insured under a homeowner's policy (the "Policy") issued by Dongbu. The Policy contains the following relevant provisions (bold in original):

---

[1]The Second Count asserts a breach of duty claim against the real estate broker and real estate agent. Underlying Compl. ¶¶ 41-44.

3

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A.  In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.  "We", "us" and "our" refer to the Company providing this insurance.

. . .

2.  "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

. . .

5.  "Insured" means:

a.  You and residents of your household . . . .

. . .

8.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a.  "Bodily injury"; or
b.  "Property damage".

9.  "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

. . .

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.  Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

4

> 2.  Provide a defense at our expense by counsel of
> our choice, even if the suit is groundless, false or
> fraudulent.  We may investigate and settle any
> claim or suit that we decide is appropriate.  Our
> duty to settle or defend ends when our limit of
> liability for the "occurrence" has been exhausted
> by payment of a judgment or settlement.

Dkt. No. 25-10, Exh. C.

The Watsons tendered the defense of the underlying action to Dongbu based

on the Policy.

## II.   <u>Procedural History</u>

After notifying the Watsons that it was defending the underlying suit subject

to a reservation of rights, Dongbu filed this declaratory relief action on June 8,

2015.  Dkt. No. 1.  The suit seeks a declaration that Dongbu is not required to

defend and/or indemnify the Watsons in the underlying action.

Dongbu filed a Motion for Summary Judgment (Dkt. No. 24), and the

Watsons' filed a Counter-Motion for Partial Summary Judgment (Dkt. No. 29).

The Court heard oral arguments on the two motions on June 24, 2016.  Dkt. No.

38.

## <u>STANDARD OF REVIEW</u>

A party is entitled to summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when, under the

governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of its position.  *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

# DISCUSSION

## I.    Framework for Construing Insurance Contracts

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy."  Hawaii Revised Statutes ("HRS") § 431:10–237. "Thus, under Hawaii law, courts must look to the language of the insurance policy to determine the scope of an insurer's duties." *State Farm Fire and Cas. Co. v. Wimberly*, 877 F. Supp. 2d 993, 999 (D. Haw. 2012).  A duty to defend "arises whenever there is a potential claim for indemnification liability of the insurer to the insured." *Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co.*, 76 Hawaiʻi 166, 169, 872 P.2d 230, 233 (1994).  "Furthermore, where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." *Id.* (quotation omitted).  The duty to defend, however, is not without bounds.  It "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'" *Id.* (citation omitted).

Hawai'i follows the "complaint allegation rule."  Under this rule,

> [t]he focus is on the alleged claims and facts.  The duty to
> defend "is limited to situations where the pleadings have
> alleged claims for relief which fall within the terms for
> coverage of the insurance contract. 'Where pleadings fail to
> allege any basis for recovery within the coverage clause, the
> insurer has no obligation to defend.'"

*Burlington Ins. Co. v. Oceanic Design & Const. Inc.,* 383 F.3d 940, 944–45 (9th

Cir. 2004) (quoting *Hawaiian Holiday*, 76 Hawai'i at 169, 872 P.2d at 233).  "In

determining whether coverage exists under a liability policy, Hawaii courts do not

look at the way a litigant states a claim, but rather at the underlying facts alleged in

the pleadings."  *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128, 1134 (D. Haw.

2010) (citing *Bayudan v. Tradewind Ins. Co.*, 87 Hawai'i 379, 387, 957 P.2d 1061,

1069 (Haw. App. 1998)).

## II.   **Application of Framework**

The Underlying Complaint asserts the following two claims against the

Watsons: (1) breach of contract; and (2) negligent misrepresentation.  The Policy

provides coverage only for an "occurrence," which is defined, in part, as "an

accident" that results in "bodily injury" or "property damage."  Dongbu argues that

there is no potential for coverage because neither of the claims against the Watsons

constitutes an "occurrence."  More specifically, Dongbu argues that the underlying

action alleges claims for, or arising out of, a breach of contract, which the Hawai'i

appellate courts and the Ninth Circuit Court of Appeals have ruled do not

8

constitute an "occurrence" within the meaning of a liability insurance policy.  The

Court agrees both that whether there has been an "occurrence" is a threshold issue,

and that the Underlying Complaint does not allege claims constituting an

"occurrence."  As a result, Dongbu is entitled to summary judgment.

### A.    Breach of Contract Claim (Count One)

It is well-established that claims which arise solely because of an alleged

breach of contractual duties do not arise from an occurrence or accident under

Hawai'i law.  *See Burlington Ins. Co.*, 383 F.3d at 949 ("[C]ontract and contract-

based tort claims are not within the scope of [liability] policies under Hawaii

law."); *Group Builders, Inc. v. Admiral Ins. Co.*, 123 Hawai'i 142, 148, 231 P.3d

67, 73 (App. 2010).  Indeed, courts in this district have repeatedly held that claims

that arise solely because of a contractual relationship do not result in an occurrence

that could be covered by the type of policies at issue here.  *See, e.g.*, *State Farm*

*Fire & Cas. Co. v. Chung*, 882 F. Supp. 2d 1180, 1190 (D. Haw. 2012) (finding

that the breach of contract and breach of implied covenant of good faith and fair

dealing did not arise from an occurrence as defined in the policies, because they

arose out of the contractual relationship for the sale of property between the

underlying plaintiffs and the defendants).

In the instant case, Count One alleges a breach of written contract for the

sale of real property.  The allegations contained in Count One arise out of the

contractual relationship between the Watsons and the Underlying Plaintiffs, and thus, do not result in covered occurrences as defined by the Policy.

**B.      Negligent Misrepresentation Claim (Count Three)**

As to the underlying claim for negligent misrepresentation, the relevant inquiry is whether this claim is "premised on a contractual relationship or [is] based on an independent tort claim under state law." *Burlington Ins. Co. v. United Coatings Mfg. Co., Inc.*, 518 F. Supp. 2d 1241, 1251 (D. Haw. 2007). The Underlying Complaint alleges the following:

> 46.    Defendants are liable to Plaintiffs for negligent misrepresentation. Defendants provided Plaintiffs with false information, or omitted, or failed to disclose material information. Defendants intended that Plaintiffs and others would rely on information and provided it for that purpose. Defendants failed to exercise ordinary care in communicating information, and Plaintiffs justifiably relied on it to their detriment.
>
> 47.    Defendants deliberately concealed the true facts regarding the real property from Plaintiffs, and Broker and Agent either deliberately concealed the true facts known to them which representations were made as to the condition of the real property and without have any sufficient basis on which to make any representations, knowingly made false representations, concealing the true condition of the real property as set forth in this complaint.
>
> 48.    Defendants concealed the facts when they each knew the true and correct facts regarding the real property.
>
> 49.    The concealment of the true facts from Plaintiffs was done with the intent to induce Plaintiffs to enter into the agreement.

50.    Plaintiffs' reliance on statements made by Defendants was justified in that the seller had owned the real property for a number of years and the Defendants had access to information known to the Seller or could ascertain it by a reasonably competent and diligent investigation and inspection.

51.    As a proximate result of the fraud and deceit alleged, Plaintiffs were induced to purchase the real property.  Plaintiffs have been damaged in the amount set forth in the demand for relief.

Underlying Compl. ¶¶ 46-51.

Dongbu argues that "there is no coverage for 'negligent misrepresentation' claims because such claims arise out of a contractual relationship and thus do not allege an 'occurrence' or 'accident.'"  Dkt. No. 33 at 8.  While the Court does not agree that such is *always* the case, it is clear from the allegations that the negligent misrepresentation claim here arose from the Watsons' alleged nondisclosure of material information regarding the Property, and that the negligent misrepresentation claim is inextricably intertwined with the sales contract. *See id.* ¶ 49 ("The concealment of the true facts from Plaintiffs was done with the intent to induce Plaintiffs to enter into the agreement.") and ¶ 51 ("As a proximate result of the fraud and deceit alleged, Plaintiffs were induced to purchase the real property.").  Courts in this district have repeatedly found no coverage in these instances. *See, e.g.*, *Chung*, 882 F. Supp. 2d at 1191-92 (finding no coverage under homeowners' policy for claims arising from sale of insured property because they arose solely out of the contractual relationship between the underlying

11

plaintiffs and the defendants); *State Farm Fire & Cas. Co. v. CTC Const. Co., Ltd.*, Civ. No. 05-000494 DAE-LEK (D. Haw. June 19, 2006) (finding no basis for coverage under the policy because a negligent failure to disclose defects in the sale of real estate arose out of an alleged breach of contractual duty, and thus, did not constitute an occurrence under the policy); *State Farm Fire & Cas. Co. v. Scott*, Civ. No. 06-00119 SOM-BMK, 2007 WL 7698845, at *9 (D. Haw. Jan. 24, 2007) ("Because each claim is based on the nondisclosure, none of the Kozials' claims is covered by either Policy.").  As such, the weight of authority in this district supports Dongbu's position.

The Watsons cite to *Illinois Nat'l Ins. Co., Inc., et al. v. Nordic PCL Const.*, Civ. No. 11-00515 SOM/KSC, 2013 WL 3975668 (D. Haw. July 31, 2013), in arguing that the alleged precontract misrepresentations made through the MLS listing exist independent of any contract claims brought by the Underlying Plaintiffs.  The Watsons' reliance on *Nordic* is misplaced.  In that case, Nordic tendered the defense of construction defect claims to two insurers ("the Insurers"), prompting the Insurers to seek a declaratory judgment that they owed no duty to defend or indemnify Nordic with respect to either lawsuit.  As to the underlying lawsuit involving Safeway, the court disagreed with the Insurers, reasoning as follows:

> Nordic opined that, even if Safeway had ultimately hired a
> different contractor to install the VersaFlex product, Safeway

12

could have sued Nordic for having, through misrepresentation, caused Safeway to have the contractor install the VersaFlex product.  According to Nordic, the misrepresentation claim is therefore independent of the contract that Safeway and Nordic entered into.

After carefully reviewing the Safeway Complaint, the court concludes that the Safeway Complaint may include independent tort claims arising from alleged precontract statements by Nordic.  While the court remains mindful of Hawaii's "complaint allegation rule," *Burlington*, 383 F.3d at 944, the court notes that the Safeway Complaint is drafted in extremely broad language.  *See, e.g.*, Compl. ¶ 79, ECF No. 160-5.  At the very least, there is a potential that Nordic, if liable for alleged precontract misrepresentations independent of any actual contract between Nordic and Safeway, will be entitled to insurance coverage relating to such liability.  If the precontract statements cannot be seen as part and parcel of the actual contract, then they may relate to a covered "occurrence."

*Id.* at *5-6.

The court emphasized that it was "*not* saying that any precontract statement gives rise to an independent tort claim."  *Id.* at *6 (emphasis added).  Rather, the court made clear:

[M]ost of the statements Nordic allegedly made before the contract was signed are unlikely to be actionable.  A representation that Nordic would do a good job, for example, would not support a tort claim independent of a breach of contract claim.  But the alleged representations concerning the VersaFlex product appear at least arguably not to have merged into the construction contract.

*Id.*

13

The precontract negligent misrepresentation claim concerning the VersaFlex product is different than the precontract negligent misrepresentation claim at issue here.  The former involved a representation that the court determined did not merge into the construction contract, because as Nordic pointed out, "even if Safeway had ultimately hired a different contractor to install the VersaFlex product, Safeway could have sued Nordic for having, through misrepresentation, caused Safeway to have the contractor install the VersaFlex product." *Id.* at *5. In contrast, the representations made in the MLS listing are not independent of the contract that the Watsons entered into with the Underlying Plaintiffs, because there is nothing in the record to suggest that an independent cause of action would have arisen against the Watsons but for the consummation of the sales contract.  Indeed, according to the Underlying Complaint, those very (mis)representations are the basis for the contract claims against the Watsons and their agents.  As such, the Court concludes that the negligent misrepresentation claim in this instance is contract-based, and thus, not covered under the Policy.  *See Burlington Ins. Co. v. United Coatings Mfg. Co., Inc.*, 518 F. Supp. 2d 1241, 1250 (D. Haw. 2007) ("Contracts-based claims—including claims sounding in tort which are predicated upon, stemming directly from, or derivative of, United Coatings' contracts, contract of sales, and warranties—are not covered under the CGL Policy.").

14

# CONCLUSION[2]

The Court hereby GRANTS Dongbu's Motion for Summary Judgment (Dkt. No. 24) and DENIES the Watsons' Cross-Motion for Partial Summary Judgment (Dkt. No. 29).  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  July 27, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

Dongbu Ins. Co., Ltd. v. Watson; CV 15-00214 DKW-BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

---

[2]The Court need not and does not reach the remaining arguments raised by Dongbu, including the applicability of Policy exclusions.